Daniel J. ZINK, Jr., individually, Cynthia Zink, individually, Heather A.P. Zink and Aaron D. Zink, by and through their Conservator, Cynthia Zink, Plaintiffs,

v.

GMRI, INC., a Florida corporation d/b/a Red Lobster, Tamara Enders, and Liberty Mutual Insurance Company, a Massachusetts corporation, individually and severally, Defendants.

No. 01–CV–73016–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 2002.

---

James P. Colbert, Lyon, Colbert, Rochester, MI, Gregory M. Bereznoff, Royal Oak, MI, for Plaintiffs.

F. Peter Blake, Blake, Kirchner, Detroit, MI, for Defendants.

## *OPINION*

DUGGAN, District Judge.

On August 9, 2001, Plaintiffs filed an eleven-count complaint against Defendants, alleging that they suffered personal injuries after consuming food at a Red Lobster Restaurant in Rochester Hills, Michigan. On December 27, 2001, Defendants filed a motion for summary judgment, alleging that the complaint was not filed within the applicable statute of limitations. Plaintiffs filed a response on January 24, 2002. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs, and that the decisional process would not be significantly aided by oral argument. Therefore, the motion shall be resolved on the briefs submitted. *See* E.D.Mich.L.R. 7.1(e)(2). For the reasons that follow, Defendants' motion for summary judgment shall be denied.

## Background

On July 8, 1998, Plaintiffs Daniel Zink, Jr. ("Mr.Zink") and Cynthia Zink ("Mrs. Zink"), along with their two children, Heather A.P. Zink ("Heather") and Aaron D. Zink ("Aaron"), were patrons at a Red Lobster Restaurant located in Rochester Hills, Michigan. (First Am.Compl. ¶ 9). Plaintiffs allege that during that visit to Red Lobster they were waited on and served by a waiter named Daniel Bush ("Bush"), an employee of Red Lobster. (First Am.Compl. ¶ 20). Plaintiffs claim that at the time he served them, Bush "appeared to be ill, sweating and run down." (First Am.Compl. ¶ 21). Plaintiffs state that Mr. Zink, Heather, and Aaron all consumed a tossed salad that was prepared by Bush, while Mrs. Zink consumed a salad that was not prepared by Bush. (First Am.Compl. ¶ 23).

On August 13, 1998, Mr. Zink was treated by Dr. Abdul S. Al–Kassab. (*See* Def.'s Mot. for Summ.J., Ex. A at 1). At that time, Mr. Zink presented with a flu-like illness, complaining that he felt nauseated and tired. (*Id.*). He also stated that he started feeling ill about a week to 8 days before he came to see Dr. Al–Kassab. Dr. Al–Kassab also noted that Mr. Zink had some drainage and had recently[1] seen a local physician who gave him an antibiotic "on the grounds that he had a sinus infection." (*Id.*). Mr. Zink came to see Dr. Al–Kassab because he was not getting better. Dr. Al–Kassab noted that Mr. Zink also reported that his urine had become darker

---

1. Plaintiffs state that Mr. Zink saw Dr. Janaki Kambhampati, M.D. on August 10, 1998, and that Dr. Kambhampati diagnosed Mr. Zink with either a sinus infection or a flu virus and prescribed an antibiotic. (*See* Pls.' Resp. at 2).

in color and was "more like tea-colored." (*Id.*). Based on Mr. Zink's symptoms, Dr. Al–Kassab ordered laboratory tests on Mr. Zink.

The following day, August 14, 1998, the laboratory evaluation revealed that Mr. Zink tested positive for Hepatitis A.[2] (Defs.' Mot. for Summ.J. at 2). Per Dr. Al–Kassab's instruction, Mr. Zink was admitted to William Beaumont Hospital in Troy, Michigan that same day for treatment and further testing.

Mr. Zink was seen by another doctor, Dr. Sachi Gowda, M.D., on August 15, 1998. (Defs.' Mot. for Summ.J., Ex. B). At that time, Dr. Gowda noted that Mr. Zink had a history of flu-like symptoms which began approximately 10 days ago. (*Id.*).

On August 17, 1998, Mr. Zink reported his diagnosis of Hepatitis A to the Macomb County Health Department's Disease Control Unit. (*See* Defs.' Mot. for Summ.J., Ex. C). The reporting form states that Mr. Zink had no symptoms until August 5, 1998, and described his symptoms as "flu-like." (*Id.*).

On August 24, 1998, Mr. Zink reported his contraction of Hepatitis A to the Hepatitis Branch of the Department of Health and Human Services Public Health Service, Centers for Disease Control and Prevention. (*See* Defs.' Mot. for Summ.J., Ex. D.). On that reporting form, Mr. Zink also stated that the date of onset of his first symptoms was August 5, 1998. (*Id.*).

While a patient at William Beaumont Hospital Mr. Zink was also treated by Dr. Jerry Dancik, M.D., who specializes in nephrology. (Pls.' Resp., Ex. B). As a result of contracting the Hepatitis A virus, Mr. Zink has suffered permanent loss of kidney function that will require lifetime dialysis and/or kidney transplantation. (*Id.*; First Am.Compl. ¶¶ 14 & 15). At some point, Dr. Dancik advised Mr. Zink that the Red Lobster Restaurant in Rochester Hills may well have been the source of his contamination with Hepatitis A, as another patient who had become infected with Hepatitis A was concurrently being treated at William Beaumont Hospital, and the only situs of possible contamination shared by each was exposure to that restaurant. (Pls.' Resp., Ex. B).

The Plaintiffs first notified Defendants of a possible cause of action in December of 2000, through correspondence from Plaintiffs' counsel. (*See* Defs.' Mot. for Summ.J., Ex. E). While Plaintiffs' counsel and Defendants discussed the matter over the next seven months, they did not settle the matter.

On August 9, 2001, Plaintiffs filed suit against Defendants in this Court. On August 24, 2001, Plaintiffs filed a First Amended Complaint alleging: "violation of statute" (Count I); "negligence" (Count II); "premises liability" (Count III); "negligence of employee" (Count IV); "loss of consortium" (Count V); "injury to parent" (Count VI); "breach of Michigan Consumer Protection Act" (Count VII); "implied warranty" (Count VIII); "promissory estoppel as to Defendants Tamara Enders and Liberty Mutual" (Count IX); "promissory estoppel" (Count X); and "waiver of the statute of limitations" (Count XI).

On December 27, 2001, Defendants filed a motion for summary judgment, asserting that "the Plaintiff's[3] cause of action is barred by the applicable statute of limitations." (Defs.' Mot. for Summ.J. at 3).

---

**2.** Plaintiffs allege that at some point Heather and Aaron were also diagnosed with Hepatitis A. (First Am.Compl. ¶ 11).

**3.** The Court notes that the *Plaintiffs* in this case include not only Mr. Zink, but also Mrs.

Zink, Heather, and Aaron. Plaintiffs allege that Mr. Zink, Heather, and Aaron all contracted Hepatitis A from the Red Lobster Restaurant in Rochester Hills. However, Defendants' motion for summary judgment only

*Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment when "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." There is "no genuine issue of material fact for trial unless, by viewing the evidence in favor of the nonmoving party, a reasonable jury could return a verdict for that party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

## Discussion

■ Both parties agree that a three year period of limitations applies to the claims asserted in this action. *See* MICH. COMP.LAWS § 600.5805(1)(9). The parties also agree that a determination of when this cause of action accrued is governed by the "discovery rule." (Defs.' Mot. for Summ.J. at 6; Pls.' Resp. at 11).

■ Under the discovery rule, the "statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Moll v. Abbott Laboratories*, 444 Mich. 1, 506 N.W.2d 816 (1993). "Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action." *Id.* at 24, 506 N.W.2d

816. That is, "under the discovery rule, [a] plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered ... (1) an injury, and (2) the causal connection between plaintiff's injury and the defendant's breach." *Id.* at 16, 506 N.W.2d 816.

Defendants assert that Mr. Zink "first began to experience symptoms of his illness on August 5, 1998" and "[i]t was at that point that [he] discovered an injury; it was at that point that 'through the exercise of reasonable diligence, [he] should have discovered a possible cause of action.'" (Defs.' Mot. for Summ.J. at 8). Defendants fault Mr. Zink for not going to the doctor until after "eight days of suffering from severe symptoms," apparently suggesting that had he acted with reasonable diligence he would have sought medical treatment sooner and discovered the nature of his illness sooner. (Defs.' Mot. for Summ.J. at 9). Defendants assert that Mr. Zink's claim accrued on August 5, 1998, the date he first experienced symptoms. Accordingly, they assert that Mr. Zink's complaint, filed on August 9, 2001, is barred by the three year statute of limitation.

The Court rejects Defendants' suggestion that Mr. Zink failed to act with reasonable diligence in discovering his injury. All evidence presented to the Court shows that the symptoms Mr. Zink initially experienced resembled symptoms of the common flu. (Defs.' Mot. for Summ.J., Ex. A). Thus, the Court does not believe that Mr. Zink failed to act with reasonable diligence simply because he did not immediately seek medical care upon the onset of his first flu-like symptoms on August 5, 1998.[4]

---

addresses their statute of limitations argument with respect to Mr. Zink. Nevertheless, the Court notes that it has no reason to believe that the claims of the other Plaintiffs accrued prior to Mr. Zink's claims.

4. The evidence shows that before seeing Dr. Al–Kassab on August 13, 1998, complaining of his flu-like symptoms and stating that he was not getting better, Mr. Zink had seen another local physician who had prescribed

The Court also rejects Defendants' position that Mr. Zink discovered his "injury" on August 5, 1998, the first day he began to experience any symptoms of his illness. The injury at issue in this case is the contraction of Hepatitis A. On August 5, 1998, Mr. Zink only experienced common, flu-like symptoms. The Court is not persuaded that experiencing flu-like symptoms would put a reasonable person on notice that he had contracted Hepatitis A. Rather, the Court is satisfied that at the earliest,[5] Mr. Zink's claim accrued when he discovered his injury on August 14, 1998, the date he was diagnosed with Hepatitis A. *See Lefever v. American Red Cross*, 108 Mich.App. 69, 310 N.W.2d 278 (1981) (where plaintiff received transfusion of diseased blood on February 18, 1976, three year statute of limitations began to run on August 2, 1976, the date she was diagnosed with hepatitis). Accordingly, Mr. Zink's complaint filed on August 9, 2001, was filed within the applicable three year period.[6]

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment shall be denied. An Order consistent with this Opinion shall issue forthwith.

an antibiotic for him, believing that he had a sinus infection. (*Id.*).

5. As stated *supra,* under the discovery rule, the "statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action," and that "once a claimant is aware of an injury *and its possible cause,* the plaintiff is aware of a possible cause of action." *Moll v. Abbott Laboratories,* 444 Mich. 1 at 1 & 24, 506 N.W.2d 816 (emphasis added). That is, "[a] plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered ... (1) an injury, *and (2) causal connection between plaintiff's injury and the defendant's breach." Id.* at 16, 506 N.W.2d 816 (emphasis added).

The Court is without sufficient information to determine when Mr. Zink discovered, or should have discovered, the causal connection between his injury and Defendants' alleged breach. While a patient at William Beaumont Hospital, Mr. Zink learned of a possible causal connection between his illness and the Red Lobster Restaurant in Rochester Hills from Dr. Dancik. As Mr. Zink was first admitted to William Beaumont Hospital on August 14, 1998, he must have discovered the causal connection on or after that date.

6. Given this conclusion, the Court need not address Plaintiffs' additional arguments regarding waiver of the statute of limitations and estoppel.